UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL KUBIAK, <br><br>        Plaintiff, <br>v. <br><br>LARRY G. MASSANARI, Commissioner of Social Security Administration, <br><br>        Defendant. | CASE NO.  C04-2414MJB <br><br>**MEMORANDUM OPINION** |

## SUMMARY

Plaintiff Michael Kubiak appeals to the District Court from a final decision of the Commissioner of the Social Security Administration [the "Commissioner"] denying his application for Social Security Disability Insurance benefits under Title II of the Social Security Act and under Title XVI for Supplemental Security Income.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration.

I.    PROCEDURAL HISTORY

On August 20, 2001, Michael Kubiak prospectively filed an application for disability insurance benefits under Title II of the Social Security Act and under Title XVI for Supplemental Security Income, alleging disability beginning April 25, 2000.  Tr. 16.

MEMORANDUM OPINION
Page -1-

The claim was denied initially and on reconsideration. A hearing was held on May 21, 2003, before Mary F. Gallagher Dilly, an Administrative Law Judge who denied Plaintiff's claims. Tr. 16-25. Plaintiff appealed to the Appeals Council and was denied, thus, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed his appeal in this Court.

II.     THE PARTIES' POSITIONS

Plaintiff seeks reversal of the Commissioner's decision and argues that the ALJ erred by: 1) improperly rejecting Plaintiff's testimony without assessing his credibility pursuant to SSR 96-7p; 2) improperly rejecting the disability opinions of Dr. Neims because the opinions were contained on a questionnaire; 3) by ignoring the medical expert who testified at the disability hearing; 4) failing to properly evaluate Plaintiff's residual functional capacity pursuant to SSR 96-8p; and, 5) failing to properly address all of the Plaintiff's impairments in the hypothetical proffered to the vocational expert. The Commissioner counters that the ALJ's decision is supported by substantial evidence and free of legal error.

III.    STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

IV.     THE LAW

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172

F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A) (1992).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520(b)(2000).  The claimant must establish that he is not engaging in any substantial gainful activity and has one or more severe impairments.  At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations.  *Id*.  At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work.  If he is not able to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the Commissioner finds that the claimant is unable to perform other work, then s/he is found disabled.

V.      SUMMARY OF THE RECORD EVIDENCE AND THE ALJ DECISION

   A.  *The ALJ's rulings*

The ALJ found at step two that Plaintiff had severe impairments of an affective and personality disorder and that prior to cessation of drug and alcohol use, the Plaintiff's substance addiction disorder was also severe.  Tr. 21  At step three, the ALJ found that

MEMORANDUM OPINION
Page -3-

when the Plaintiff was abusing alcohol and drugs, he had a severe depressive disorder, mood disorder and substance addiction disorder which met the requirements of Listings 12.04, 12.08 and 12.09 of the Act. Tr. 22   The contrast is true, that without abuse of alcohol and drugs, the Plaintiff did not meet the listings. Tr. 23.   At step four that Plaintiff has the residual functional capacity for work without physical limitations, but with the ability to perform simple, routine, repetitive, one step, two step tasks,; but should have no contact with the public and only occasional contact with co-workers . Tr. 23. The ALJ concluded  that Plaintiff was capable of returning to his past work, thus not disabled as defined in the Social Security Act. Tr. 23-25.

B. *Chronicle of mental and physical impairments*

Plaintiff, Michael Kubiak was 35 years old at the time of his ALJ hearing.  Tr. 16. He alleged disability beginning on April 25, 2000, based on mental limitations, paranoia, and audio hallucinations and back pain.  Tr. 78.  From the briefing on appeal, there appear to be no factual disputes regarding the record of medical evidence.  The  ALJ's summary of the medical will be outlined, below.  *See also*, Dkt. No. 10. Pp. 7-10.

Germane to the issue of disability here is whether Plaintiff's substance and alcohol abuse were material contributing factors to his disability.  Tr. 16.  Set forth below is a summary of the ALJ's  evaluation of that evidence.

> 1) The  ALJ refers to the reports of Dan Neims, PsyD., which began in July 28, 2000, when Plaintiff was seeking state general assistance benefits. Dr. Neims diagnosed Plaintiff with a major depressive episode, marked, and a Personality disorder, NOS finding moderate to marked limitations in his ability to exercise judgement; marked limitations in ability to take care of himself, control physical and motor movements and maintain appropriate behavior.  Tr. 18. Lastly, Dr. Neims noted that the Plaintiff was homeless and that Plaintiff believed he could work if that circumstance was ameliorated.  *Id*.  Other evaluations by Dr. Neims in June 20, 2001, revealed Dr. Neims first belief that Plaintiff had not reported drug and alcohol abuse. *Id.*
> 2) A physical consultative examination on October 22, 2001 by Melvin Jackson, DO., included the admission of street drug use, "primarily

MEMORANDUM OPINION
Page -4-

 

cocaine." *Id.* The physical revealed Pss planis, bilateral; plantar fascitis, bilateral, mild; and chronic depression. *Id.*

3)  Another psychological test by Dr. Neims in August 1, 2001, Plaintiff described his daily activities and his last alcohol use as July 4, 2001 and refuted history of methamphetamine, cocaine and other drugs. At that time Dr. Neims diagnosed a major depressive episode, marked with psychotic features. assessed a GAF score of 48. Tr 19.

4)  On September 13, 2001, disability determination services (DDS) psychologist evaluated the Plaintiff's medical records (to that date) and together with another DDS psychologist completed an "associated mental residual functional capacity assessment". "On testing ...claimant could follow 1 and 2 step instructions and concentrate for 2 hours at a time. ...Overall it was determined that the claimant was not precluded from all work by his psychological condition."  Tr. 20

5)  Another progress report conducted by Kitsap Mental Health Services on August 21, 2002 involved treatment goals, significant stressors and observations.  The Plaintiff stated he was "still working" and attending narcotics anonymous meeting ("NA")  meetings 3 to 4 times a week, pursuant to court order.  " Plaintiff's own rating of his depression was '6' and his anxiety '4' and that on good days much lower." *Id.*

6)  Reporting that he did not like his job, on the October 4, 2002, Kitsap Mental Health assessment, Plaintiff indicated he was painting (for a living), still attending NA meetings, and he had been abstinent from alcohol one year as of March 2003.  No auditory or visual hallucinations were reported and his judgment was deemed good, though he had continuing frustrations with co-workers. Tr. 21

7)  A final DDS evaluation, this time by Dr. Neims on March 26, 2003 reiterated the depressive disorder NOS, Post Traumatic Stress Disorder (not previously noted) and methamphetamine/cannabis abuse in intermediate remission, and adult anti-social behavior. Specifically, the ALJ indicated his source for this last summary came from Dr. Neims' treatment notes which he gave greater weight that an evaluation form. *Id.*

VI.   ANALYSIS

    A.  *Medical Evidence*

Plaintiff argues that the ALJ rejected the opinions of  Dr. Neims, Psy.D., by: 1) ignoring the regulations regarding weighing evidence and assessing medical opinions; 2) superseding the opinions of a medical doctor, specifically, Dr. Neims, with those of a therapist who is not an '"acceptable medical source." and, thereby substituting the ALJ's opinion for that of a medical expert; 3) failing to re-contact Dr. Neims under his duty to

1  develop the record; and 4) failing to acknowledge the medical expert who testified at the
2  hearing whose opinion agreed with Dr. Neims.  Dkt. No. 10.

3  The Commissioner agrees that the ALJ is responsible for resolving conflicts and
4  ambiguities in medical testimony.  See *Allen v. Heckler*, 749, F2d 577 (9th Cir 1984),
5  *Morgan v. Commissioner,* 169 F.3d 595 (9th Cir. 1999).  More importantly, they argue,
6  the physician's opinion is not a legal one and such issues are left to the Commissioner.
7  *See* 20 C.F.R.  § 416.927(e).  *Harmon v. Apfel*, 211 F.3d 1172, (9th Cir. 2000).  However,
8  this court may draw specific and legitimate inferences from the ALJ's opinions.
9  *Magallanes*, 881 F.2d 751.

10  Plaintiff states that Dr. Neims supported his diagnosis of depressive mood disorder
11  and daily auditory hallucinations after five evaluations and by determining Plaintiff's
12  mental impairment with a GAF score of 48 /49 for the period of 2000 through 2001.  By
13  contrast, the Commissioner argues that the Kitsap Mental Health Service records show an
14  assessment in August, 2002, which reflected a "slight depressed mood," improved daily
15  living and a substance abuse treatment regimen that positively affected his depression.  In
16  the ALJ's summary of the medical evidence she refers to this same period wherein Dr.
17  Neims' reports show on going substance abuse, not admitted until Plaintiff was in
18  treatment in 2002.  By March, 2003, the Kitsap records show the Plaintiff's self-reports
19  to  that having abstained from alcohol and drugs maintained, over the past year, have
20  resulted in no auditory or visual hallucinations and he admits a host of daily activities.
21  The ALJ's reliance upon the Kitsap therapist treatment notes was not in error, especially
22  when much of it consists of the Plaintiff's self-reportings--uncontroverted by other
23  evidence in the record for that same time period.  This record does belie an on-going
24  disability.  Moreover, before the ALJ on May 21, 2003, The Plaintiff testified that he had
25  returned to full time work just one month before the hearing.  Tr. 269, 276-277.
26

MEMORANDUM OPINION
Page -6-

Rejecting Dr. Neims' conclusions in the face of Plaintiff's admissions of steady improvement under a substance abuse treatment regime was not error. Accordingly, the undersigned finds that the ALJ did not reject Dr. Neims' opinions, without providing specific and legitimate reasons, as required under *Magallanes* and *Morgan.*

B.  *Plaintiff's Credibility Assessment*

Plaintiff argues that the ALJ erred in rejecting or discrediting his testimony. The [Commissioner] must, however, make a specific and justifiable finding that the claimant's testimony is not credible. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996), citing *Magallanes*, 881 F.2d at 755. Plaintiff is correct that the internal administrative social security rulings ("SSR") outline factors which the ALJ should consider in evaluating a claimant's subjective symptom testimony. See SSR 96-7p. Dkt. No. 10. The ALJ may also employ "ordinary techniques of credibility evaluation," considering such factors as the claimant's reputation for truthfulness; inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; a lack of candor by the claimant regarding matters other than the claimant's symptoms; the claimant's work record; and information from physicians, relatives, friends, or others concerning the nature, severity, and effect of the claimant's symptoms. *See Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997)(citations omitted).

Plaintiff argues that the inconsistencies referred to by the ALJ are unclear and that the ALJ's findings were conclusory. The Commissioner argues that the ALJ makes repeated references to the aspects of daily living to which the Plaintiff testified. Dkt. No. 13, Tr. 18-23. In this Court's review of the record, the ALJ's continually refers to Plaintiff's inconsistencies in his reports to physicians about his condition, primarily his substance and alcohol abuse, in addition to references to Plaintiff's daily activities. Additionally, the Plaintiff's statements to the Kitsap Health providers include

inconsistences with Plaintiff's statements to Dr. Neims.[1]  The admissions of daily living activities only corroborate the reports to therapists at Kitsap and underscore the inconsistencies apparently made while Plaintiff was influenced by drugs and alcohol reported by Dr. Neims.  Thus, the ALJ did not make a single conclusory statement as Plaintiff argues.  But rather, the findings refer back to the entire record of inconsistencies from "information to various [medical] practitioners" in  her summary of medical evidence,.  There she points out the times when substance abuse, in particular was denied, but later revealed.   This is not error and thus, the ALJ's assessment of the Plaintiff's credibility is clear and convincing as required under the regulations.

   C. *Residual Functional Capacity Assessment and the Vocational Expert's Testimony*

   Plaintiff argues that the ALJ's assessment of this residual functional capacity is deficient in a number of aspects: 1) by not following the regulatory mandates, the ALJ failed to assess whether the Plaintiff is capable of working on and regular and continuing basis; 2) the RFC determination failed to consider Plaintiff's reaction to stress and the "demands of work;" 3) by failing to do a function by function analysis with a narrative discussion as required under SSR 96-8p;  4) by ignoring the limitations identified by the non-examining State agency physicians; and 5) by finding Plaintiff capable of performing "simple work" when such a reference is not a sufficient requirement for those with a mental illness. Dkt No. 10.

   The Commissioner argues that the ALJ's decision is based upon the whole record as she is required under SSR 96-5p. Dkt. No. 13.  The entire record, after discrediting Plaintiff's testimony (which this court has concluded was not improper), leaves evidence

---

[1] 20 C.F.R. § 404.1513 (d) refers to other sources which are 'acceptable' to determine a medically determinable impairment to include "therapists."  *See also*, 20 C.F.R. §§ 416.913, et seq.

supporting the conclusion that Plaintiff's RFC permits " a wide range of work." *Id.* Moreover, the Commissioner asserts that the ALJ was not required to call a VE because she found "absent drug and alcohol abuse Plaintiff could return to his past work," and that it is within the Commissioner's discretion to do so. *Id.* The Court agrees.[2] Accordingly, the ALJ's decision is supported by substantial evidence as required by law.

VII.  CONCLUSION

The Commissioner's determination to deny Michael Kubiak disability benefits and supplemental income is supported by substantial evidence and free of legal error. The Commissioner's decision is **AFFIRMED**.

DATED this 20th day of October, 2005.

*/s/ M. J. Benton*

MONICA J. BENTON
United States Magistrate Judge

---

[2] At step four, the Plaintiff asserts that the ALJ's reliance upon the vocational expert 's testimony ( herein after the "VE") was flawed because the hypothetical presented failed to consider all the Plaintiff's limitations   Plaintiff points to the "failure to include the degree of fatigue, depression, Personality Disorder, reduced concentration, persistence and pace, ability to tolerate stress as all other limitations" identified in the record."  Finally, the Plaintiff argues the ALJ failed to ask the VE on the record if his testimony was consistent with the DOT as mandated by SSR 00-4p. Dkt. No.10

The VE was asked for an opinion on unskilled to skilled work with light to very heavy levels of exertion. Dkt. No. 13, Tr. 313-314.  He, not surprisingly, reiterated the ALJ's conclusion that the Plaintiff could return to his past work.